NO. 12-09-00359-CV

 

IN THE COURT OF APPEALS          

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

BRIAN SCOTT DOYLE and 

NDEMAND, INC.,                                            §                  APPEAL
FROM THE 273RD

APPELLANTS

 

V.                                                                      
§                   JUDICIAL DISTRICT COURT

            

JAY R. TESKE,

APPELLEE                                                     
§                   SHELBY COUNTY, TEXAS







MEMORANDUM
OPINION

            Brian Scott Doyle and NDemand, Inc. appeal the trial court’s judgment in
favor of Jay R. Teske in Teske’s suit for damages arising out of a business
relationship between him and Doyle.  Doyle and NDemand, Inc. raise fourteen
issues on appeal.  We affirm in part and reverse and render in part. 

 

Background

            Doyle
and Teske decided to start a computer business together.  Doyle, who had
previously worked on computers, agreed to provide the labor, and Teske, who had
previously made money, agreed to provide the capital.  They discussed several
different names for the business before agreeing on NDemand Technologies, Inc.

            In
January 2000, after they had agreed on the name of the business, Teske wrote a
check for $25,000.00 made payable to Doyle to fund NDemand Technologies. 
However, neither Doyle nor Teske ever incorporated NDemand Technologies. 
Instead, Doyle simply deposited Teske’s check into Doyle’s personal account. 
When he filed his personal tax return for the year, Doyle claimed the $25,000.00
as income.  Teske also helped Doyle obtain a credit card for NDemand
Technologies by serving as guarantor for the card.  Although the credit card
was for the business, Doyle used the credit card to purchase items that were
not business related.

            After
about two years, NDemand Technologies was failing.  Doyle decided that he
should start another business, one focused on bringing internet to rural
areas.  Doyle called the new business NDemand, Inc.  He lobbied Teske to invest
in the new business, but Teske declined.  Thus, Doyle began NDemand, Inc. with
new investors.  Around the same time, NDemand Technologies ceased operations
completely.

            At
the time NDemand Technologies failed, the business credit card had a sizeable
balance.  Doyle did not have the funds to pay the credit card debt so Teske, as
guarantor, was required to make the payments.  Teske learned of the credit card
debt sometime in December 2002, made his first payment on the debt in January
2003, and finally paid off the credit card in August 2004.  After paying off
the card, Teske asked for detailed billing.  Approximately two weeks after his
request, the bank provided him with the past billing, and Teske learned that
Doyle had used the credit card for personal purchases.  Sometime later, Teske
also learned that Doyle never set up a corporation for NDemand Technologies.

            Believing
that Doyle’s actions were wrong and had cost him money, Teske sued Doyle and
NDemand, Inc. in January 2007 for fraud, breach of fiduciary duty, Blue Sky
violations, and fraud in stock transactions.  After a bench trial, the trial
court awarded Teske a judgment against Doyle and NDemand, Inc.   This appeal
followed. 

 

Findings of Fact and Conclusions of Law

            In
their initial brief, Doyle and NDemand, Inc. stated that the trial court failed
to provide findings of fact and conclusions of law even though two requests for
findings and conclusions had been made.  Doyle and NDemand, Inc. did not, in
their initial brief, seek relief based on this inaction of the trial court. 
However, in their reply brief, without listing it as a separate issue, Doyle
and NDemand, Inc. assert that the trial court committed reversible error by
failing to provide findings of fact and conclusions of law.

Doyle
and NDemand, Inc.’s reply brief may address any matter in Teske’s brief, but a
reply brief is not intended to allow parties to raise new issues.  See Tex. R. App. P. 38.3; Campbell v.
Stucki, 220 S.W.3d 562, 570 (Tex. App.–Tyler 2007, no pet.). 
Therefore, this argument is not properly before this court.  See Campbell,
220 S.W.3d at 570. 

Even
if we consider Doyle and NDemand, Inc.’s argument, the outcome does not
change.  Rule 296 authorizes any party in a nonjury trial to request written
findings of fact and conclusions of law.  Tex.
R. Civ. P. 296.  The request shall be filed within twenty days after the
judgment is signed and served on all other parties in accordance with Rule
21a.  Id.  The trial court shall file its findings of fact and
conclusions of law within twenty days of a timely filed request.  Tex. R. Civ. P. 297.  If the trial
court fails to so file findings of fact and conclusions of law, “the party
making the request shall, within thirty days after filing the original request,
file with the clerk . . . a ‘Notice of Past Due Findings of Fact and
Conclusions of Law’ which shall be immediately called to the attention of the
court by the clerk.”  Id.  If a party fails to file a Rule 297
reminder, the party waives any complaint regarding the trial court’s failure to
file findings of fact and conclusions of law.  Alpert v. Crain, Caton
& James, P.C., 178 S.W.3d 398, 410 (Tex. App.–Houston [1st Dist.]
2005, pet. denied).  The scheme is a sensible one in that, if the judge does
not comply with the initial request, “the more rigorous procedure of Rule 297
will ensure that the court is in a timely fashion fully apprised of the request
and the party’s continuing interest in having it honored.”  Cherne Indus.,
Inc. v. Magallanes, 763 S.W.2d 768, 772 (Tex. 1989).

Here,
the record contains four documents relevant to findings of fact and conclusions
of law.  The first is a letter from Doyle and NDemand, Inc.’s counsel to the
trial court judge stating that he “faxed herewith [his] proposed findings of
fact and conclusions of law.”  The letter is dated June 9, 2009, and bears a
filemark of June 26, 2009.  The proposed findings of fact and conclusions of
law are not a part of the record at that point.  The second is the trial
court’s judgment, with no findings of fact and conclusions of law, signed on
July 16, 2009.  The third is “Defendants Brian Doyle and NDemand, Inc.’s
Request for Findings of Fact and Conclusions of Law.”  This document, filed on
July 24, 2009, requests the trial court to make findings of fact and
conclusions of law within twenty days after the judgment is signed.  The only
reference to Rule 297 in the document is the assertion that “Rule 297 of the
Texas Rules of Civil Procedure provides that the ‘Court shall file its findings
of fact and conclusions of law within twenty days after a timely request is
filed.’”  The fourth document is “Defendants Brian Doyle and NDemand, Inc.’s
Findings of Fact and Conclusions of Law” filed on April 1, 2010.  This document
is unsigned.  The certificate of service contains the date June 9, 2009, but
again the signature block under the certificate of service is blank.

Doyle
and NDemand, Inc. complied with Rule 296, and properly requested findings of
fact and conclusions of law.  However, they did not take the extra necessary
step of complying with Rule 297, and thus, never “ensure[d] that the court
[was] in a timely fashion fully apprised of the request and the party’s
continu[ed] interest in having it honored.”  See id. 
Therefore, any complaint related to the trial court’s failure to file findings
of fact and conclusions of law is waived.

Doyle
and NDemand, Inc.’s issue related to the trial court’s failure to file findings
of fact and conclusions of law, which was raised in their reply brief, is
overruled.

 

Standard of Review

In
a nonjury trial, when, as here, a trial court makes no separate findings of
fact or conclusions of law, we must assume that the trial court made all
findings in support of its judgment.  Pharo v. Chambers Co., 922
S.W.2d 945, 948 (Tex. 1996).  The trial court's judgment must be affirmed if it
can be upheld on any legal theory that finds support in the evidence.  In
re W.E.R., 669 S.W.2d 716, 717 (Tex. 1984) (per curiam).  When, as
here, the appellate record includes the reporter's record, the trial court's
implied fact findings are not conclusive.  BMC Software Belg., N.V. v.
Marchand, 83 S.W.3d 789, 795 (Tex. 2002).  A trial court's implied findings
of fact are reviewable for legal and factual sufficiency of the evidence by the
same standards that are applied in reviewing evidence supporting a jury's
verdict.  See Catalina v. Blasdel, 881 S.W.2d 295, 297
(Tex. 1994).  

A
party who challenges the legal sufficiency of the evidence to support an issue
on which it did not have the burden of proof at trial must demonstrate on
appeal that there is no evidence to support the adverse finding.  Croucher
v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983).  In reviewing for legal
sufficiency of the evidence, we consider the evidence in the light most
favorable to the verdict, indulging every reasonable inference in favor of the
verdict.  See Autozone, Inc. v. Reyes, 272 S.W.3d 588, 592 (Tex.
2008) (per curiam); Associated Indem. Corp. v. CAT Contracting, Inc.,
964 S.W.2d 276, 286 (Tex. 1998).  To determine whether legally sufficient
evidence supports a challenged finding of fact, the reviewing court must credit
favorable evidence if reasonable jurors could, and disregard contrary evidence
unless reasonable jurors could not.  See City of Keller v. Wilson,
168 S.W.3d 802, 807 (Tex. 2005).  The finder of fact is the sole judge of the
credibility of the witnesses and the weight to be assigned to their testimony.  Id.
at 819.  The finder of fact is free to believe one witness and disbelieve another,
and reviewing courts may not impose their own opinions to the contrary.  Id.
Accordingly, reviewing courts must assume that the finder of fact decided all
credibility questions in favor of the findings, and chose what testimony to
disregard in a way that was in favor of the findings, if a reasonable person
could do so.  Id. at 819-20.  A finder of fact “may disregard
even uncontradicted and unimpeached testimony from disinterested witnesses”
where reasonable.  Id. at 820.

In
addition, it is within the finder of fact's province to resolve conflicts in
the evidence.  Id. at 820.  Consequently, we must assume that,
where reasonable, the finder of fact resolved all conflicts in the evidence in
a manner consistent with the findings.  Id.  Where conflicting
inferences can be drawn from the evidence, it is within the province of the
finder of fact to choose which inference to draw, so long as more than one
inference can reasonably be drawn.  Id. at 821.  Therefore, we
must assume the finder of fact made all inferences in favor of the findings if
a reasonable person could do so.  Id.  The final test for legal
sufficiency must always be “whether the evidence at trial would enable
reasonable and fair-minded people to reach the verdict under review.”  Id.
at 827.  Anything more than a scintilla of evidence is legally sufficient to
support the finding.  See Cont’l Coffee Prods. Co. v. Cazarez,
937 S.W.2d 444, 450 (Tex. 1996).  

            If a
party is attacking the factual sufficiency of the evidence to support an
adverse finding on an issue on which the other party had the burden of proof,
the attacking party must demonstrate that there is insufficient evidence to
support the adverse finding.  Westech Eng’g, Inc. v. Clearwater
Constructors, Inc., 835 S.W.2d 190, 196 (Tex. App.–Austin 1992, no
writ).  In addressing a factual sufficiency of the evidence challenge, an
appellate court must consider and weigh all of the evidence.  Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).  The verdict should
be set aside only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust.  Id.  However, this
court is not a fact finder, and we may not pass upon the credibility of the
witnesses or substitute our judgment for that of the trier of fact.  Durban
v. Guajardo, 79 S.W.3d 198, 208 (Tex. App.–Dallas 2002, no pet.)  The
trial court may take into consideration all of the facts and surrounding
circumstances in connection with the testimony of each witness and accept or
reject all or any part of that testimony.  Canal Ins. Co. v. Hopkins,
238 S.W.3d 549, 557-58 (Tex. App.–Tyler 2007, pet. denied) (op. on reh’g).  

 

Teske’s Claims Against NDemand, Inc.

            In
their second issue, Doyle and NDemand, Inc. assert that judgment against NDemand,
Inc. is improper because NDemand, Inc. was not in existence at the time of the
acts sued upon and NDemand, Inc. had no dealings with Teske other than
providing him internet service.  In his response, Teske asserts that Doyle
acquired NDemand, Inc. by March 17, 2004.  Teske further notes that NDemand,
Inc. did not file a verified pleading asserting that it is not liable in the
capacity in which it was sued.  Thus, Teske asserts that there is “some
evidence in the record sufficient to warrant the trial court, in the absence of
appropriate pleadings, to find that NDemand, Inc. was the beneficiary of the
funds advanced by Teske to Doyle.”  Teske cites no authority to support this
position.

            After
a thorough review of the record, we have found no evidence showing that NDemand,
Inc. was the beneficiary of the funds advanced by Teske to Doyle.  Doyle
deposited the $25,000.00 check in his personal checking account.  No evidence
was presented that any of that money made its way to NDemand, Inc.  Doyle used
the NDemand Technologies’ credit card for personal purchases and NDemand
Technologies’ purchases.  Again, no evidence was presented that the credit card
was used for NDemand, Inc.’s purchases.

            Further,
NDemand, Inc.’s argument is not about capacity.  It argues that it is not
liable to Teske because NDemand, Inc. had no interactions with Teske.  Thus, NDemand,
Inc.’s argument “does not fall within the ambit of rule 93(2), and the lack of
verification does not prevent [it] from asserting [its] argument.”  See Toles
v. Toles, 113 S.W.3d 899, 909 (Tex. App.–Dallas 2003, pet. denied).

            Finally,
NDemand, Inc. cannot be liable under agency theory.  The acts of a corporate
agent on behalf of the corporation generally are deemed to be the corporation’s
acts.  Latch v. Gratty, Inc., 107 S.W.3d 543, 545 (Tex. 2003)
(per curiam).  But here, there was no evidence that Doyle’s acts were on behalf
of NDemand, Inc.  Instead, Doyle deposited Teske’s $25,000.00 check into his
personal checking account and used the credit card for personal purchases and
purchases related to NDemand Technologies’ business.  Additionally, there was
no evidence that Doyle was a corporate agent of NDemand, Inc. at the time of
the allegedly tortious actions.  There is a complete absence of evidence that
NDemand, Inc. committed any of the alleged wrongful acts against Teske.  See
City of Keller, 168 S.W.3d at  810.  Accordingly, we sustain Doyle
and NDemand, Inc.’s second issue.  Because this issue is dispositive as to
NDemand, Inc., we need not address their fourth, sixth, eighth, tenth, and
twelfth issues, all of which complain about the judgment against NDemand, Inc. 
See Tex. R. App. P. 47.1.

 

Teske’s Claims Against Doyle

            In
part of their first issue, Doyle and NDemand, Inc. assert that Teske’s claim of
breach of fiduciary duty is barred by the applicable statute of limitations.  In
his fifth issue, Doyle asserts that there is legally and factually insufficient
evidence that he breached a fiduciary duty to Teske.  Doyle’s main contention,
as it relates to this claim, is that he did not have a fiduciary relationship
with Teske.  

Limitations

            Statutes
of limitations prevent the litigation of stale claims by

 

afford[ing] plaintiffs what the legislature deems a
reasonable time to present their claims and protect[ing] defendants and the
courts from having to deal with cases in which the search for truth may be
seriously impaired by the loss of evidence, whether by death or disappearance
of witnesses, fading memories, disappearance of documents or otherwise.

 

 

 

S.V. v.
R.V., 933 S.W.2d 1, 3 (Tex. 1996).  The applicable statute of
limitations for breach of fiduciary duty is not later than four years after the
day the cause of action accrues.  Tex.
Civ. Prac. & Rem. Code Ann. § 16.004(a)(5) (Vernon 2002).  However,
the discovery rule defers the accrual of certain causes of action until the
plaintiff knew or through the exercise of reasonable diligence should have
discovered the wrong.  Computer Assocs. Int’l, Inc. v. Altai, Inc.,
918 S.W.2d 453, 455 (Tex. 1996).  The discovery rule applies in “those cases
where the nature of the injury incurred is inherently undiscoverable and the
evidence of injury is objectively verifiable.”  Id. at 456.  To
be inherently undiscoverable, an injury, by its nature, must be unlikely to be
discovered within the limitations period despite the exercise of due
diligence.  G. Prop. Mgmt., Ltd. v. Multivest Fin. Servs. of Tex., Inc.,
219 S.W.3d 37, 48 (Tex. App.–San Antonio 2006, no pet.).  When dealing with a
fiduciary, the nature of the injury is presumed to be inherently
undiscoverable.  Id.  However, a plaintiff must still exercise
diligence and has some responsibility to ascertain when an injury occurs.  Id.

Here,
Doyle took Teske’s check for $25,000.00 and placed it in his personal checking
account in January 2000.  The business credit card was issued in January 2000
and Doyle used it for personal purchases.  Teske filed his original petition on
January 4, 2007.  Doyle argues that Teske knew of his legal injury in the
summer of 2002.  Doyle further asserts that Teske should have known by December
2002 at the latest because Teske then became aware that Doyle was not paying
NDemand Technologies’ credit card bill.  However, Teske did not immediately
realize that Doyle had taken advantage of the situation.  Of course, Teske was
aware that Doyle had not issued any stock to him or repaid the $25,000.00. 
Teske was never given a balance sheet or income and expense records showing the
condition of the company.  By the fall of 2002, Teske knew that the business was
failing.  Teske testified that he learned in January 2003 that Doyle had not
been making payments on the credit card account.  Teske also testified that he did
not request the detailed billing for the credit card until around the time of
his final payment, August 13, 2004.  The bank provided him with the information
approximately two weeks later.  Thus, Teske determined in August 2004, after he
received those statements, that Doyle had used the credit card for personal
purchases. Teske did not
know that Doyle had deposited the $25,000.00 check into Doyle’s personal
account until even later.  Accordingly, the trial court’s implied findings that
Teske failed to learn of his legal injury until after January 2003, less than
four years from the time that suit was filed, and that Teske exercised
reasonable diligence in discovering Doyle’s wrongful conduct are supported by
the evidence.  See Altai, Inc., 918 S.W.2d at 455-56. We overrule
that portion of the first issue asserting that Teske’s breach of fiduciary duty
claim is barred by limitations.

In
their fourteenth issue, Doyle and NDemand, Inc. assert that Teske waived his
right to pursue his claims by not timely filing them.  Assuming this issue
refers to something other than the limitations argument asserted in issue one,
we can locate no separate argument in their brief addressing their fourteenth
issue.  Thus, issue fourteen is waived for improper briefing.  See Tex. R. App. P. 38.1(i).  We overrule
Doyle and NDemand, Inc.’s fourteenth issue.

Breach of
Fiduciary Duty

            Doyle
argues there was no fiduciary relationship.  Alternatively, he argues that “if
anyone was the fiduciary it was [Teske]” because he was older and a more
experienced businessman.  Finally, he argues that, if there was a fiduciary
relationship, Doyle did not breach it.

            There
are formal fiduciary relationships, which arise as a matter of law in certain
formal relationships and includes relationships between attorneys and clients,
partners, and joint venturers.  Ins. Co. of N. Am. v. Morris, 981
S.W.2d 667, 674 (Tex. 1998).  Additionally, there are informal fiduciary
relationships.  Courts impose fiduciary duties on some relationships because of
their special nature or because a person “occupies a position of peculiar
confidence towards another.”  Johnson v. Brewer & Pritchard, P.C.,
73 S.W.3d 193, 199 (Tex. 2002).  The term “fiduciary” refers to integrity and
contemplates fair dealing and good faith as the basis of the transaction.  Id. 
Thus, an informal fiduciary duty may arise from a moral, social, domestic, or
purely personal relationship of trust and confidence.  Meyer v. Cathey,
167 S.W.3d 327, 331 (Tex. 2005) (per curiam).  To impose an informal fiduciary
duty in a business transaction, the special relationship of trust and
confidence must exist prior to, and apart from, the agreement made the basis of
the suit.  Id.  The elements of breach of a fiduciary duty claim are
(1) a fiduciary relationship exists between the plaintiff and defendant, (2)
breach of the fiduciary duty by the defendant, and (3) the defendant’s breach
results in injury to the plaintiff or benefit to the defendant.  Graham
Mortg. Corp. v. Hall, 307 S.W.3d 472, 479 (Tex. App.–Dallas 2010, no
pet.).  

            Doyle
and Teske agreed to form a corporation.  However, no steps were ever taken to do
so.  Doyle ran the company as his sole proprietorship and treated Teske as an
investor.  However, even if we assume there was no formal relationship from
which a formal fiduciary relationship would arise, the record supports a
finding of an informal fiduciary relationship.  

Doyle
was still a teenager in 1996 when he started helping Teske and his wife with
their home computer problems.  Initially, Doyle did the work as an employee of
a computer company, but by 1998 he did the work “on the side” and Teske paid
him directly, in cash.  Doyle testified that, after he moved to Houston, he
would visit Teske once or twice a month from 1998 through 2004 and work on
Teske’s computers.  Teske would give him $50.00 or $100.00 each time.  Doyle
testified that “[t]here was never any expectation of, during that time, of
payment for services rendered.”  He did it because he “liked the guy” and he
thought Teske was a “good guy.”  

Teske,
who was eighty years old at the time of trial in 2009, testified that every
time Doyle came to his house, “he walked away with pockets full of money.”  The
last time Doyle was at Teske’s house, Teske gave him $750.00.  Teske and his
wife thought of Doyle as their son.  Teske said that Doyle was a good friend
and he had trusted him.  He was really disappointed and mad because they had
taken Doyle in like a son.  Teske explained that he did not “cover every step”
because he thought of Doyle as a son whom he trusted as a close friend.

A
special relationship of trust and confidence existed before January 2000.  Thus,
the nature of the relationship between the parties was that of fiduciaries.  See
Meyer, 167 S.W.3d at 331.  Doyle argues that only Teske could be the
fiduciary because he was older and a more experienced businessman.  However,
both business associates can owe each other the duty of a fiduciary.  Although
Teske was older, he was not more experienced in the computer repair field,
which was the nature of the business.  Also, according to Teske, he was to
provide the money and Doyle was to provide the expertise and work.  While Doyle
maintains that it was Teske’s obligation to incorporate the business, Teske
testified that it was Doyle’s obligation.  The trial court was free to believe
Teske’s testimony and disbelieve Doyle’s.  City of Keller, 168
S.W.3d at 819.  Teske trusted Doyle to set up the corporation, to run the
corporation, and to handle the start up money and credit card for the
corporation.  Doyle never incorporated NDemand Technologies, but instead ran
the business as his sole proprietorship.  He breached his fiduciary duty to
Teske by running the business as his sole proprietorship to the exclusion of
Teske, including using funds and a credit card that Teske designated for their
business for his personal benefit.  The trial court’s implied findings that
Doyle was a fiduciary of Teske and that Doyle breached his fiduciary duty to
Teske are supported by the evidence.  See id. at 827; Cain,
709 S.W.2d at 176.  Because the evidence is legally and factually sufficient to
support the trial court’s determination that Doyle breached his fiduciary duty
to Teske, we overrule Doyle’s fifth issue.  

The
trial court’s judgment must be affirmed if it can be upheld on any legal theory
supported by the evidence.  In re W.E.R., 669 S.W.2d at 717.  We
have determined that the evidence supports a finding of breach of fiduciary
duty, and the claim is not barred by limitations; thus, the judgment should
stand.  Accordingly, we need not address the remainder of Doyle and NDemand,
Inc.’s first issue, in which they assert that all other claims against them are
barred by limitations, or the third, seventh, ninth, and eleventh issues in
which Doyle contends the trial court erred in rendering judgment in favor of
Teske on his remaining causes of action.  See Tex. R. App. P. 47.1. 

 

Quantum Meruit and Accord and Satisfaction

            In
his thirteenth issue, Doyle asserts that the value of Doyle’s services to Teske
exceeded the amounts claimed to be owed to Teske and thus Doyle should not have
to repay Teske.  Doyle requests this court render a decision for him based on
quantum meruit for the value of his services or, at a minimum, consider the
value of his services as accord and satisfaction for the money invested by
Teske.  He asserts he is entitled to a full offset for Teske’s claims.

            The
burden is on Doyle to establish the affirmative defense of accord and
satisfaction.  Harris v. Rowe, 593 S.W.2d 303, 306 (Tex. 1979). 
This defense rests on a new contract in which the parties agree to discharge an
existing obligation in a manner otherwise than originally agreed.  Id. 
The tender of the alternate satisfaction is upon the condition that the
acceptance will constitute a discharge of the underlying obligation.  Id. 
An “accord” is in essence a contract or agreement, and “accord and
satisfaction” is founded on and dependent on, and results from a contract,
express or implied, between the parties.  Id.

            Doyle
asserts that he spent a total of $76,500.00 worth of uncompensated time working
on Teske’s personal computers.  He argues that his “services arise to the level
of accord and satisfaction.”  He does not identify evidence of an “accord,”
that is, a new agreement between him and Teske in which they agree to discharge
the original obligations by application of Doyle’s work on Teske’s personal
computers.  Neither has our review of the record uncovered such an agreement. 
Doyle has not met his burden to establish the affirmative defense of accord and
satisfaction.  Id.

Quantum
meruit is an equitable remedy “based upon the promise implied by law to pay for
beneficial services rendered and knowingly accepted.”  Vortt Exploration
Co. v. Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex. 1990). 
Generally, a party recovers under quantum meruit when no express contract
covers the services rendered.  Id.  The elements of quantum
meruit are (1) valuable services were rendered or materials furnished, (2) for
the person sought to be charged, (3) the services or materials were accepted,
used, and enjoyed by the person sought to be charged, (4) under such
circumstances that reasonably notified the person sought to be charged that the
plaintiff expected to be paid.  Id.

            Here,
Doyle testified that he provided computer repair work for Teske without the
expectation of payment for services rendered.  He also testified that Teske
gave him money when he worked on Teske’s computers.  Teske testified that he
paid Doyle for the work performed.  Thus, the evidence does not support Doyle’s
assertion that he is entitled to recover under the theory of quantum meruit.  See
id.  We overrule Doyle’s thirteenth issue.

 

Affirmative Relief Sought by Doyle and
NDemand, Inc.

            Although
not listed as a separate issue, Doyle and NDemand, Inc., also assert that the
trial court erred when it did not award them damages on their counterclaim alleging
that Teske filed a frivolous lawsuit.  A brief must contain a clear and concise
argument for the contentions made, with appropriate citations to authorities
and to the record.  Tex. R. App. P. 38.1(i). 
Doyle and NDemand, Inc., failed to cite any authorities or any portion of the
record in support of their claim for affirmative relief and have therefore
waived this complaint.  See Daniel v. Falcon Interest Realty Corp.,
190 S.W.3d 177, 189 (Tex. App.–Houston [1st Dist.] 2005, no pet.).  Therefore,
to the extent that they seek appellate review of the trial court’s determination
that Teske’s lawsuit was not frivolous, we overrule Doyle and NDemand, Inc.’s
issue.

 

Disposition

We
affirm the trial court’s judgment in favor of Teske against Doyle.
 We reverse the trial court’s judgment in favor of Teske against
NDemand, Inc., and render judgment that Teske take nothing on his
claims against NDemand, Inc.

 

                                                                                                Brian Hoyle

                                                                                                    
Justice

 

 

Opinion delivered March 31, 2011.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

(PUBLISH)